**SEALED**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

20-CV-61410-ALTONAGA/ STRAUSS

UNITED STATES OF AMERICA,
*ex rel.* VICTORIA HABLITZEL,

    Plaintiff,

v.

ALL IN JETS, LLC and
SETH A. BERNSTEIN,

    Defendants
_____/

**FILED UNDER SEAL**

**DO NOT SERVE**

**DO NOT PUT ON PACER**

### QUI TAM COMPLAINT

The Relator, Victoria Hablitzel, files this qui tam action in the name of the United States against All in Jets, LLC and Seth A. Bernstein ("Defendants"), pursuant to 31 U.S.C. § 3730, and states as follows:

### Introduction

1.    On March 11, 2020, the World Health Organization declared the novel coronavirus (COVID-19) a global pandemic. On March 27, 2020, the President signed into law the Coronavirus Aid, Relief and Economic Security Act, which created the Paycheck Protection Program ("PPP").

2.    The PPP provides forgivable, emergency loans to small businesses that certify, under penalty of fine or imprisonment, that they will use the funds only to pay for payroll expenses, rent, mortgage interest, or utilities during a covered period.

3.    On April 27, 2020, All in Jets, LLC ("JetReady"), a Florida-based jet chartering company, received a PPP loan in the amount of $1,173,382. Despite the clear requirements, as stated on the application form, that loan funds obtained through the program must be used only to

pay a business's payroll, rent, mortgage interest, or utilities expenses, JetReady knowingly failed to use the funds for such purposes.

4. Instead, at the direction of its owner, Seth A. Bernstein, JetReady immediately misappropriated the funds by transferring them to: (a) an investment bank that Mr. Bernstein co-owned; (b) various third party companies to whom Mr. Bernstein either owed money or from whom he would receive a direct personal benefit; and (c) an outside pilot service to pay part of JetReady's overdue invoices.

5. In sum, this knowing misappropriation of federal funds violates the False Claims Act because the Government would not have funded the loan if it knew that JetReady had falsely certified its intended use of the funds. Accordingly, both JetReady and Mr. Bernstein caused JetReady to submit a false claim to the Government for which they should be held liable, jointly and severally, for actual damages, treble damages, fines, and attorney's fees.

## Parties, Jurisdiction, and Venue

6. Relator Victoria Hablitzel ("Hablitzel") resides in Pompano Beach, Florida. From 2017 until early May 2020, she served as a Senior Accountant and, after a promotion, Assistant Controller for Defendant JetReady. During her tenure with JetReady, Hablitzel worked primarily out of JetReady's headquarters in Fort Lauderdale. On March 9, 2020, JetReady's Chief Financial Officer and Co-Chairman, Daniel Hebert ("Hebert") informed Hablitzel that the company would be laying her off with three months' severance pay. During her severance period, Hablitzel was encouraged to still come into work, which she did until she accepted another position. Hablitzel's last day at JetReady was on May 7, 2020.

7. Defendant All in Jets, LLC, is a Florida limited liability company with its principal place of business in Fort Lauderdale, Broward County, Florida. It operates under the tradename "JetReady" and has a Florida fictitious name registration for the name. JetReady is a private jet

charter operator and aircraft management company that provides charter flights worldwide and has a charter fleet of heavy to midsize jets including Gulfstream GIVSPs, Gulfstream GIVs, Challenger 601s and Hawker 800 models. JetReady's base of operations is located at 140 S. Apollo Blvd., Melbourne, Brevard County, Florida. As mentioned above, Daniel Hebert is JetReady's CFO and Co-Chairman. John Scotto ("Scotto") is JetReady's President of Sales and its Co-Chairman. Joseph Carello ("Carello") is JetReady's Director of Operations. As of February 1, 2020, JetReady had approximately 75 employees, including but not limited to pilots, flight attendants, mechanics, and various operational and administrative employees. By April 1, 2020, JetReady had laid off approximately 55 employees and had only 20 remaining. When Hablitzel left JetReady on May 7, the company was still at 20 employees.

8. Defendant Seth Adam Bernstein ("Bernstein") is the owner of JetReady. He resides at 2104 Lakehaven Point, Longwood, Florida. Today, in addition to owning JetReady, Bernstein is the owner, chairman & CEO of SMB Capital ("SMB Capital"), a private equity and advisory firm based in Manhattan. SMB Capital's office is located at 655 Madison Avenue, 20th Floor New York, NY 10065, the same address that JetReady lists as its New York address. Bernstein is also the current co-owner and CEO of Bernstein Equity Partners, LLC, an investment bank that Bernstein co-owns and manages with Hebert. BEP owns Bernstein Hebert Securities LLC, a registered FINRA securities broker-dealer. BEP shares the same New York address as SMB Capital and JetReady.

9. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and 31 U.S.C. § 3732(a).

**General Allegations**

*The Paycheck Protection Program*

11.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, 134 Stat. 281, created the PPP, initially making $349 billion in forgivable loans available to small businesses impacted by the COVID-19 pandemic. The U.S. Small Business Administration ("SBA") administers the PPP, promulgates the rules and regulations governing the PPP, and guarantees all PPP loans made by lenders.

12.     The PPP allows small businesses (less than 500 employees) to obtain forgivable loans of up to $10 million, at 1% interest, to cover payroll costs, rent, mortgage interest, utilities and other overhead expenses for a "covered period." PPP loans are processed and approved by qualified lenders that the SBA approves. Lenders may issue PPP loans without the SBA's prior review or approval, but lenders must agree to be responsible for determining borrower eligibility under the SBA's criteria. To that end, the SBA issued interim final rules governing PPP eligibility on April 2, April 3, April 14, and April 24, 2020.

13.     Because the initial $349 billion originally allocated for the PPP was quickly exhausted, Congress proposed a bill authorizing a second tranche of emergency funding. Accordingly, on April 24, 2020, the President signed into law the Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620, whereby Congress allocated another $310 billion for PPP loans to small businesses. The SBA continued to adopt interim rules governing eligibility through June 24, 2020.

14.     On June 5, 2020, the PPP was further modified when the President signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641. The Flexibility Act modifies the original PPP loan criteria that was set forth in the CARES Act. Some of the major modifications set forth in the Flexibility Act are:

- Congress changed the loan repayment period from 2 years to 5 years with the interest rate remaining at 1%.

- Congress expanded the original 8-week "covered period" for a business to exhaust its loan proceeds on payroll, rent, mortgage interest, or utilities, before the borrower may qualify for loan forgiveness. The new covered period is the earlier of a 24-week period or December 31, 2020, for any new borrower after June 5, 2020, to spend the loan funds on approved expenses. Borrowers who borrowed before June 5, 2020, may choose between the 8-week covered period or the extended period.

- Congress relaxed the requirement that 75% of the borrower's loan funds be spent on payroll expenses and reduced the requirement to 60%. The remaining 40% of the funds may be used for rent, mortgage payments, or utilities.

- Congress extended the deferral period for loan repayments to begin for any unforgiven loan amount from 6 months to the date on which the borrower's forgiveness amount is remitted to the lender.

- Congress extended the safe harbor date from June 30, 2020, to December 31, 2020, for a borrower to rehire laid off full-time equivalent ("FTE") employees, so as not to have the borrower's loan forgiveness amount reduced.

- Between February 15 and December 31, 2020, loan forgiveness will be determined without regard to the reduction of FTE employees, if the borrower in good faith can prove either: (a) an inability to rehire individuals who were employees on February 15, 2020, and an inability to hire similar qualified employees by December 31, 2020; or (b) the business has been unable to return to the same level of business activity it was at before February 1, 2020, due to COVID-19 health compliance requirements.

15. As of June 20, 2020, 5,456 lenders participated in the PPP, issuing 4,666,560 loans totaling nearly $515 billion. Notably, PPP loans in excess of $1 million comprise only 1.7% of the total number of loans funded across the country, and the average loan amount is $110,000.

### *The PPP Borrower Application Form*

16. The PPP has a uniform Borrower Application Form ("BAF") that lenders must use or incorporate into their loan applications. A copy of the BAF (issued by the SBA on April 2, 2020) is attached as Exhibit 1. In addition to asking for the business's average monthly payroll expense, the business's number of employees, and the names of all owners who own

5

20% or more equity in the business, the BAF requires the borrower to represent the "purpose of the loan" by checking boxes for more than one of the following categories: payroll, lease/mortgage interest, utilities, or other (with room to explain other).

17. In addition to identifying the purpose of the loan, the BAF requires the following certifications:

- "The **Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted** that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under [the CARES Act] (the Paycheck Protection Program Rule)."

- "**All SBA loan proceeds will be used only for business-related purposes as specified in the loan application** and consistent with the Paycheck Protection Program Rule."

*See* Exhibit 1 (emphasis added).

18. The BAF further requires, in relevant part, that an authorized representative of the applicant "certify in good faith" each of the following by initialing next to each item:

- "Current economic uncertainty makes this loan request **necessary to support the ongoing operations of the Applicant**."

- "**The funds will be used to retain workers and maintain payroll** or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; **I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud**."

- "**I further certify that the information provided in this application** and the information provided in all supporting documents and forms **is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law**, including under 18 U.S.C. 1001 and 3571 **by imprisonment** of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine or not more than $5,000; **and, if submitted to a federal insured institution**, under 18 USC 1014 **by imprisonment of not more than thirty years and/or a fine or not more than $1,000,000**."

*See* Exhibit 1 (emphasis added).

19.     While Hablitzel does not possess a copy of JetReady's final BAF submitted to its lender, First Bank of the Lake, a state bank chartered in Missouri, JetReady was required to certify to the truth and accuracy of the above representations in the BAF, the falsity of which is punishable by significant liability, fines and imprisonment.

*JetReady Fraudulently Represents on its PPP Loan Application
That it Will Use the Loan Funds Only for Authorized Purposes*

20.     As of February 1, 2020, JetReady had approximately 75 employees, including but not limited to pilots, flights attendants, mechanics, and various operational and financial employees.

21.     As of Hablitzel's last day of employment at JetReady on May 7, 2020, JetReady had 20 employees. Of the approximately 55 employees that JetReady laid off, the company terminated all of them before April 1, 2020. Upon information and belief, none of the terminated employees have been rehired.

22.     On April 3, 2020, Hebert and Bernstein completed a draft BAF on behalf of JetReady. *See* Exhibit 2. While Hebert and Bernstein executed the form, they did not submit it, as they did not have information regarding JetReady's payroll. Nevertheless, on the draft, Hebert and Bernstein represented that the loan would be used for "payroll." *Id.*

23.     In mid-April 2020, Hebert and Scotto took the lead in preparing and submitting JetReady's final BAF ("JetReady BAF").

24.     In preparing the final version of the JetReady BAF, Hebert and Scotto enlisted the assistance of Tavita Halkett, Bernstein's executive assistant and an employee of Bernstein Equity Partners, and Hablitzel in gathering certain documents and information. While Hablitzel did not assist Hebert or Scotto in filling out the actual application, in mid-April, she provided Scotto a payroll report that ADP prepared for PPP purposes.

25. On or about April 16, 2020, the First Bank of the Lake, based in Missouri, approved the JetReady BAF.

26. On the morning of April 27, 2020, JetReady received $1,173,382 in PPP funds, via electronic transfer into its account at Wells Fargo Bank. Before JetReady received the funds, it had a negative balance in the account of -$2,750.92.

### *JetReady Misuses its PPP Funds*

27. Immediately upon receipt of the funds, at Bernstein's direction, Halkett and Hebert, enlisted Hablitzel's assistance in transferring the almost all of the funds away from JetReady.

28. Some of the funds were used to pay JetReady's overdue invoices. The majority of the funds, however, were sent to an investment bank co-owned by Bernstein and Hebert and a variety of third-party companies to whom Bernstein either owed money, or from whom he would derive a personal benefit.

29. Hablitzel and Halkett transferred the funds to the following destinations at Bernstein's request:

| Date | Recipient | Executed Transfer | Amount |
| --- | --- | --- | --- |
| 4/27/20 | Hathaway Pilot Services | Hablitzel | $25,000 |
| 4/27/20 | Nantucket Dreamland Foundation | Hablitzel | $25,000 |
| 4/27/20 | Bernstein Equity Partners | Hablitzel | $350,000 |
| 4/28/20 | Bernstein Equity Partners | Hablitzel | $400,000 |
| 4/28/20 | SCCF LLC | Halkett | $26,794.35 |
| 4/28/20 | Ramsey Psychiatr | Halkett | $26,700 |
| 4/28/20 | Ramsey Psychiatr | Halkett | $15,000 |
| 4/28/20 | Ramsey Psychiatr | Halkett | $5,435 |
| 4/29/20 | Bernstein Equity Partners | Hablitzel | $250,000 |
| | | | **$1,123,929.35** |

8

The relevant portion of JetReady's Wells Fargo April 30, 2020, bank statement, showing the deposit of $1,173,382 in PPP funds and the above transfers totaling $1,123,929.35, is attached as Exhibit 3.

30. Because Hablitzel left JetReady on May 7, 2020, she does not know how JetReady spent the $49,452.65 balance of the PPP funds.

31. Bernstein Equity Partners is an investment bank that Bernstein and Hebert co-own and co-manage in Manhattan. That entity – with no other apparent connection to JetReady – received $1,000,000 in wire transfers from JetReady's PPP funds.

32. Likewise, Nantucket Dreamland Foundation ("NDF") received a $25,000 transfer from JetReady. In April 2020, NDF was hosting a fundraising campaign to build a drive-in theater in Nantucket, Massachusetts, for summer residents. Notably, on April 28, the date on which JetReady transferred $25,000 in PPP funds to NDF, NDF publicly thanked "long-time friend and generous donor…Seth Bernstein" for "a challenge gift of $25,000," noting that every dollar donated by others would be matched by Bernstein up to $25,000.

33. On April 27, JetReady transferred $26,794.35 of its PPP funds to SCCF LLC (Sports Construction of Central Florida), a company in Winter Park, Florida, that builds sports fields and courts. Upon information and belief, these funds were used to pay for the construction of a sports court, *e.g.*, tennis, basketball, etc., at Bernstein's home or another location.

34. On April 27, JetReady transferred $25,000 of its PPP funds to Hathaway Pilot Services ("HPS"). Charles L. Hathaway, Jr. ("Hathaway"), is the principal of HPS and resides in Las Vegas, Nevada. Hathaway has been a contract pilot and seller of aircrafts with HPS for 37 years and has been a pilot for 40 years. In 2010, Hathaway pled guilty to wire fraud, mail fraud, and conspiracy charges in the Middle District of Florida (Case No. 09-cr-00018),

resulting from an indictment charging him and his associates with submitting $10 million in false invoices to an aviation company over a 15-year period. As of March 27, 2020, JetReady purportedly "owed" HPS for $49,843.00 for unspecified pilot services. Payment of these invoices, however, was not an authorized use of PPP funds, *i.e.*, payroll, rent, mortgage interest, or utilities expenses. Even assuming HPS provided pilot services to JetReady, HPS was not an "employee" of JetReady.

35. On April 28, JetReady made three transfers totaling $37,135 to "Ramsey Psychiatr[y]", but neither the full name of the entity, nor the purpose of the transfers, is clear. Regardless of what goods or services were purchased from "Ramsey Psychiatr[y]" with JetReady's PPP funds, this expense likewise did not fall into one of the four permissible categories.

36. In sum, it is unequivocal that JetReady's PPP funds were not used for authorized purposes under the PPP, which are limited to JetReady's payroll, rent, mortgage interest, or utilities expenses.

### *Bernstein Directed the Transfers of JetReady's PPP Funds*

37. E-mail traffic among JetReady's employees makes clear that Bernstein masterminded the misappropriation and misuse of JetReady's PPP funds.

38. On April 27, 2020, at 8:52 a.m. (the same morning on which JetReady received the PPP funds), Halkett emailed Hablitzel, notifying Hablitzel that she initiated a wire for $26,794.35 from the JetReady Wells Fargo account to pay SCCF for an invoice referencing "sports camp."

39. On April 27, 2020, at 10:47 a.m., Halkett emailed Hablitzel, directing Hablitzel to wire $25,000.00 to "Chuck Hathaway today (ASAP)." At 10:59 a.m., Hablitzel emailed Halkett the wire confirmation.

40. On April 27, 2020, at 11:35 a.m., Halkett emailed Hablitzel, directing Hablitzel to wire $25,000.00 to Nantucket Dreamland Foundation. When Hablitzel asked Halkett if she should note "on behalf of Seth Bernstein" on the transfer form, Halkett replied to just say, "Seth Bernstein."

41. On April 27, 2020, at 2:44 p.m., upon receiving a request to wire most of the PPP funds to Bernstein Equity Partners, Hablitzel emailed Halkett and Hebert to provide them with a summary spreadsheet of the wires sent from the JetReady Wells Fargo account up to that point on April 27, 2020. In addition to those transfers above, the spreadsheet also included the three transfers to "Ramsey Psychiatr[y]" totaling $37,135.00, with a reference notation of "Seth Personal 04/27/20."

42. In response to Halkett and Hebert's inquiry about wiring funds to Bernstein Equity Partners, Hablitzel referenced that there is a $500,000.00 per day cap on wire transfers from the JetReady Wells Fargo. Hablitzel offered to "wire $500k today, $500k tomorrow, and the remainder on Wednesday [April 29]."

43. On April 27 at 2:46 p.m., Hablitzel corrected her prior email and says she will only be wiring $450,000.00 to Bernstein Equity Partners that day because she had already executed $50,000.00 in wires from the Wells Fargo account that day. Hebert responds, "Okay no worries. But please make sure with Karen or Bob that no ACH pulls are approved." Shortly thereafter, Hablitzel again corrects the amount of the wire and says Wells Fargo informed her that JetReady exceeded the wire limit for one day, so she could only wire $350,000.00 to Bernstein Equity Partners. She follows with a confirming email to Hebert and Halkett, enclosing the wire receipt for $350,000.00.

44. On April 28, 2020, at 11:56 a.m. Halkett emails Hablitzel, copying Hebert, and states, in relevant part:

11

>    **As per Seth's instructions to me**, please wire
>
>    The maximum daily amount allowed into BEP Wells Fargo account.

(Emphasis added).

45. On April 28, 2020, at 12:02 p.m., Hablitzel replied to Halkett's email, copying Hebert, and states:

>    I would like confirmation that this has been approved by all parties. Dan please confirm.
>
>    Further, I would like written confirmation that I have had no decision making authority in regards to the release of any/all funds and that I will not have any liability associated with any claims of misappropriated funds.

46. On April 28 at 12:13 p.m., Hebert responded to Hablitzel, and states:

>    **Tavita was instructed by Seth to move the funds from JetReady to BEP.** I hereby confirm that the instructions originated from and approved by Seth Bernstein.
>
>    In addition, I hereby confirm ath (sic) you have no decision-making authority with respect to the disbursement of funds in the JetReady Wells Fargo account.

(Emphasis added).

47. On April 28 at 12:15 p.m., Hablitzel forwarded Hebert's email to Carello, JetReady's Director of Operations.

48. On April 28 at 12:25 p.m., Hablitzel emails Hebert and Halkett, and states:

>    I'm in a very awkward situation with all of this. I was terminated back on March 9th, 2020 (effective 03/06/2020) and have been wanting to return my bank tokens and transfer the banking permissions to someone other than myself since the first week of March. I have been willing to assist in the meantime with payroll processing and general accounting questions as needed by Impacct. **I do not feel comfortable with any of this and would prefer for Dan to initiate the transfer of funds. Dan does have signing authority and should be able to process the transfer.**

(Emphasis added).

49. At 12:41 p.m. on the same day, Hebert responds: "Your email has been received and message acknowledged."

50. On April 28, 2020 at 9:39 a.m., Carello emailed Hebert, with a copy to Scotto, strongly objecting to the misappropriation of JetReady's PPP funds for unauthorized uses. His email states:

> Good morning Dan,
>
> It has come to my attention that the **PPP funds have been grossly misappropriated** and are already almost half gone, **without having paid any of JetReady's obligations nor going to fund payroll of furloughed employees**.
>
> The sentiments that you expressed yesterday in regards to this being the "owners money" are not exactly accurate for several reasons, the most primary being that it's considered fraud if misappropriated. The intention of the PPP program is to get American's working again during this time of crisis, not to pay the owners frivolous personal expenses or transfer to a hedge fund.
>
> By misallocating these funds JetReady's operation has been put in jeopardy potentially endangering the crew members on the road, and definitively harming the viability and longevity of the company as a whole.
>
> **I implore you to return the money that was transferred to Bernstein Equity Partners and utilize it properly**, as intended by the Federal Government, to get our airplanes operational and bring the crew members out of furlough.

A copy of Carello's email is attached as Exhibit 4 (Emphasis added).

51. On April 28, 2020, at 2:26 p.m., in response to Carello's earlier email to Hebert and Scotto, **Bernstein replied to all as follows**:

> Joe-
> I received the email-
> **I moved the money to Bernstein equity partners** not a hedge fund and not for my frivolous expenses-
> PPP money is a government loan in which I have to pay back.
> I have billions of dollars how I have been able to buy all my planes with no debt.
> Jetready has stolen from me, been mismanaged and cost me over 18 million of losses.
> It is why I decided to let jetready become self sufficient or be cash break even.
> In any case you cease and desist the wrong information you are providing to people and also the badmouthing of me and the company. Last I checked you are

> paid and only have 1 to 2 planes flying. Any other co would not have all these ppl for 1-2 planes on cert.
> Seth-

A copy of the email chain is attached as Exhibit 5 (Emphasis added).

52. The next morning, on April 29 at 9:55 a.m., Carello sent a lengthy reply to Bernstein, with a copy to Hebert and Scotto, which stated, in pertinent part:

> Seth,
>
> Payroll Protection Plan money is a fully forgivable grant as long as it's used for 75% payroll and 25% overhead and staffing is brought back to pre covid levels by June 30th. It is clearly defined to be used for those purposes and is tax payer money set aside to keep Americans employed during this global crisis. It is not a standard loan and the program does not have unlimited funds nor is it designed to support companies that don't need it or intend to use it appropriately. It is intended only for those planning on keeping Americans employed through this crisis and authorized only for specific uses as outlined under the SBA guidelines. Any spending outside of those guidelines could be considered fraud and I suggest that you consult with counsel to determine liability in that regard. If you in fact have billions of dollars in liquidity that in itself would preclude you and jetready from loan eligibility as it would be an alternative source of funding for the company negating that need.

*See* Exhibit 5.

53. Upon information and belief, Bernstein has engineered receipt of other fraudulent PPP loans, including a loan to International Jet Charters, LLC.

### **Attorney's Fees and Conditions Precedent**

54. All conditions precedent to filing suit have been performed or waived.

55. The specific facts and circumstances alleged in this Complaint have not been publicly disclosed: (a) in a federal criminal, civil, or administrative hearing in which the U.S. Government or its agent is a party; (b) in a Congressional, Government Accountability Office, or other U.S. Government report, hearing, audit, investigation; or (c) to the news media.

56. To the extent any Court determines that a public disclosure has taken place, Hablitzel is an original source of the information upon which this Complaint is based, as that

14

term is defined in 31 U.S.C. § 3730(e)(4)(B). Specifically, on or about July 6, 2020, Hablitzel disclosed to the government the information on which the allegations in this Complaint are based.

### Count I
### 31 U.S.C. § 3729(a)(1)(A)

57. The Relator realleges the allegations made in Paragraphs 1 through 56.

58. This a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

59. Through the acts described above, Defendants and their agents and employees knowingly presented and caused to be presented to the Government materially false or fraudulent claims for a PPP loan.

60. The Government, unaware of the material falsity of the claims made or caused to be made by the Defendants, approved, paid, and participated in payments made by the Government's fiscal intermediaries for a loan that otherwise would not have been allowed.

61. By reason of these payments and approvals, the Government has been damaged and continues to be damaged, in an amount yet to be determined.

WHEREFORE, the Relator requests that judgment be entered against Defendants, ordering that:

a. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. §3729 *et seq.*;

b. Defendants pay an amount equal to three times the amount of damages the Government has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $11,665.00 for each violation of 31 U.S.C. § 3729;

c. The Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. §

3730(d);

d. The Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); and

e. The Government and the Relator be granted all such other relief as the Court deems just and proper.

## Count II
## 31 U.S.C. § 3729(a)(1)(B)

62. The Relator realleges the allegations made in Paragraphs 1 through 56.

63. This a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

64. Through the acts described above, Defendants knowingly used or caused to be used a materially false record or statements to get a PPP loan paid using U.S. Government funds.

65. The Government was unaware of the material falsity of the records, statements, and claims Defendants submitted as part of the JetReady BAF.

66. But for Defendants' use of the materially false record or statement, the PPP loan would not have been paid.

67. By reason of Defendants' use of these materially false records and statements, the Government has been damaged.

WHEREFORE, the Relator requests that judgment be entered against Defendants, ordering that:

a. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. §3729 *et seq.*;

b. Defendants pay an amount equal to three times the amount of damages the Government has sustained because of Defendants' actions, plus a civil penalty against

Defendants of not less than $11,665.00 for each violation of 31 U.S.C. § 3729;

c.  The Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d.  The Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); and

e.  The Government and the Relator be granted all such other relief as the Court deems just and proper.

## Jury Demand

Pursuant to Federal Rule of Civil Procedure 38, the Relator hereby demands a trial by jury.

Dated:  July 13, 2020

_____
Adam T. Rabin
Florida Bar No. 985635
arabin@mccaberabin.com
e-filing@mccaberabin.com
Lauren E. Johnson
Florida Bar No. 112027
ljohnson@mccaberabin.com
Robert C. Glass
Fla. Bar No. 052133
rglass@mccaberabin.com

McCabe Rabin, P.A.
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
Telephone (561) 659-7878

*Counsel for Relator Victoria Hablitzel*

17